\* A. B .CHILDS & Co. *v.* WARREN BOYD AND OTHERS.

*Contract.    Agency.*

One of the defendants acting by arrangement for the plaintiffs and defendants who constituted different firms, brought suits for them against B., who was owing both said firms; and finally settled the suits by taking a deed of B.'s farm, under an arrangement between the plaintiffs and defendants that when the farm should be sold the proceeds should be appropriated to pay their debts *pro rata.* Said defendant subsequently sold the farm and received $30 cash, and a note for $300 secured by mortgage, and the security was good. The purchaser paid the interest but no part of the principal for three years, and complained to the defendant because he would take nothing but money and intimated that he should leave the farm if he could not pay a portion in property other than money ; and the defendant consented, without consulting the plaintiffs, to take a colt at $45, which he kept a year at an expense of $10, when it died. *Held* that,

under the circumstances of the case, the plaintiffs are not chargeable with any portion of the loss on the colt, there being no necessity for taking the colt in payment in order to make the sale or prevent loss of the debt.

ASSUMPSIT. The case was referred and the referee reported as follows:

In January, 1857, and for some years previous to that time, the plaintiffs, whose firm consisted of A. B. Childs and J. M. Childs, and the defendants, whose firm then consisted of Warren Boyd, Philander Parmalee and Wm. B. Haskell, were merchants doing business in Wilmington. The firm of A. B. Childs & Co. continued until after this suit was brought, but said Parmalee and Haskell had retired from the firm of Warren Boyd & Co., Parmalee had deceased, and Haskell sold his interest to said Boyd, and Boyd is the only party defendant interested in the suit. In January, 1857, one Stephen Benjamin of Searsburg had become indebted to both of said firms, and the plaintiffs placed their demands in the hands of C. N. Davenport, their attorney, for collection. Warren Boyd & Co. having learned in some way that the plaintiffs were about to put their claims in suit, Boyd went to the plaintiffs and told them that they had claims against Benjamin and if the plaintiffs sued they should sue also, and that Benjamin was poor and ought not to be put to the costs of several suits, and proposed to put their claims together so as to prevent unnecessary costs. And it was then arranged that Boyd & Co. should take the plaintiffs' claims and manage the interests of both firms, and the firms were to share according to their respective claims in whatever should be collected in case the whole was not secured; and thereupon the plaintiffs took their demands from the office of Mr. Davenport and passed them over to said Boyd, who took them with their own notes against said Benjamin to the law office of Flagg & Crosby, and Crosby made two writs of attachment in favor of Warren Boyd against said Benjamin, one on a note of $73.11 payable to Boyd & Co., and one in general assumpsit to cover two smaller notes of Boyd & Co. and the claims of the plaintiffs. These writs were dated January 29, 1857, and served the next day. Both suits were made returnable before a justice of the peace, and the real estate of said Benjamin in Searsburg was attached thereon.

Some question was raised as to the right of homestead in said real estate, and Boyd settled said suits by taking a deed of said real estate, which was subject to a mortgage to Sherman Robinson dated April 12, 1856, conditioned for the payment of $135.00, and on the 12th day of February, 1857, Benjamin and his wife deeded

said land to said Boyd. Boyd reported to the plaintiffs what he had done, and it was then understood by the parties that when the land should be sold and paid for, the plaintiffs were to have their pay if the proceeds of the sale should be sufficient to pay the whole of the claims of both firms, and if not sufficient to pay the whole, they were to share *pro rata.* In August, 1858, Boyd sold said land to one Ernest Biddle, and deeded the same August 17, 1858, for $330. Biddle paid $30 down and gave his note for $300 on demand with interest, secured by a mortgage on the same land. Biddle paid the interest every year, but did not pay any part of the principal for the first three years. He built a barn on the land and repaired the house so that the security for the $300 was good and sufficient. But Biddle complained to Boyd because he would take nothing but money of him, and intimated that he should leave the farm if he could not pay some in property other than money; and Boyd consented to take a colt at $45; he kept the colt nearly a year, when it got injured and died. I find that the keeping of the colt was worth $10. Boyd never said anything to the plaintiffs about the colt until after this suit was brought. He claimed to have made the contract for the farm solely on his own account and denied all liabilities to the plaintiffs.

The sum due the plaintiffs is $55.21, which I find the plaintiffs ought to recover, unless from the facts reported the court shall be of opinion that the price paid for the colt, and keeping the same, should be allowed the defendant. If it should be allowed him, then I find that the plaintiffs ought to recover of the defendant the sum of $33.27 including interest, subject to the opinion of the court upon the whole facts reported.

The defendant claimed that if there was an undertaking to pay the plaintiffs' claims, it was collateral and within the statute of frauds, and objected to all parol proof of such promise, and the verbal proof was received under such objection.

At the April term, 1869, BARRETT, J., presiding, the court rendered judgment for the plaintiffs upon the report of the referee for $55.21, to which the defendants excepted.

*Waterman & Read*, for the defendants.

*Chas. N., & G. W. Davenport*, for the plaintiffs.

The opinion of the court was delivered by

PECK, J. Under the agreement that the defendants should take the plaintiffs' demands against Benjamin, and put them with their

own, and manage the interests of both parties, the plaintiffs and the defendants to share *pro rata* in what should be collected, the defendant Boyd took a conveyance to himself of Benjamin's real estate, on account of these demands, it being but an equity of redemption. By this the plaintiffs acquired an equitable interest in this real estate in common with the defendants, and in the avails of it when sold. At this point, when the defendant Boyd, who is the sole defendant in interest, reported to the plaintiffs what he had done in the matter, it appears that it was then understood by the parties that when the land should be sold and paid for, the plaintiffs were to have their pay, if the proceeds of the sale should be sufficient to pay the whole of the claims of both parties, and if not sufficient to pay the whole, they were to share *pro rata*. It does not appear expressly whether at this time it was understood that Boyd was to proceed alone and sell the land in his discretion, or whether it was expected that the plaintiffs were to be consulted, and both parties should act in concert in making the sale. But as the plaintiffs make no objection to the sale of the land by Boyd to Biddle in August, 1858, it is to be presumed that Boyd in making that sale acted in good faith and in accordance with the understanding of the parties, express or implied. The only question presented for the consideration of this court is, whether the plaintiffs shall bear a portion of the loss of the colt and its keeping, which Boyd took of Biddle on the note Biddle gave for the land. The colt, after having been kept by Boyd about a year, got injured and died ; and the question is, who shall bear the loss. Had Boyd stipulated in the contract of sale of the land to take the colt in order to effect the sale, and taken it in pursuance of such stipulation ; or, if after he had sold the land and taken Boyd's note for it, ·the demand had become doubtful, and he had taken the colt to avoid a loss of the debt or some portion of it, the question would be quite different from that now presented. After Boyd had sold the land and received the $30, and taken Biddle's note for the $300 residue of the price, payable in money and secured by mortgage on the premises, and Biddle had kept the interest paid, and had built a barn on the premises, and repaired the house, so that, as the referee finds, the security for the

debt was good and sufficient, Boyd had no authority to take the colt upon the note at the common risk and expense of the plaintiffs and himself, without consulting the plaintiffs and procuring their consent; especially as it does not appear but that Biddle was personally responsible, independant of the land and mortgage security. The fact that "Biddle complained to Boyd because he would take nothing but money of him, and intimated that he should leave the farm if he could not pay some in property other than money," is not sufficient to charge the plaintiffs with any portion of this loss. Again, the referee has not found that Boyd, when he took the colt or while he kept it, intended or considered it as property in which the plaintiffs were interested; and the fact that he never said anything to the plaintiffs about the colt till after the commencement of this suit, tends strongly to justify the inference that he treated the taking of the colt as a purchase solely in his own behalf. The defendant Boyd claimed on trial to have made the contract for the farm solely on his own account and denied all liability to the plaintiffs. If this was his idea and purpose at the time he received the colt in payment, he could not then have regarded it otherwise than as his sole property. This, however, would not be decisive against the defendant if, in order to make the sale of the land or to prevent a loss of the debt, there had been a necessity for taking the colt in payment. But no such necessity, either actual or apparent, existed.

Judgment affirmed.